Cuma per

Johnson, J.

The defendant entered the harbour of Charleston through the ordinary ship channel, and therefore passed the boundary of the State before he entered the corporate limits of the city, and hence it is concluded that the offence was complete before he entered the city, and that as the jurisdiction of the City Court: is limited to cases arising within the city, consequently ithad not jurisdiction of the case.
The jurisdiction of the Circuit Court being general, and that of the City Court limited prima facie the case belonged to the former, and the question will therefore be more conveniently considered by inquiring into the grounds on which it is claimed for the latter (the City Court.)
The act of 1818, confers on the City Court “jurisdiction of the Court of General Sessions, in all cases of misdemeanor, assault and battery, arising within the city of Charlestonand supposing the offence charged in this indictment to be a misdemeanour within the meaning of the act, the question is raised, whether in point of fact the offence was committed, or in the terms of the act, arose within the city ?
The act of 1823, which created this offence, declares, •c that it shall not be lawful for any master or captain of *482 any vessel to introduce or bring into the limits of this State any free negro or person of colour, as a passenger,, or as cook, steward, or in any other capacity on board of such vessel, &c. and inflicts a penalty of ‡ 100 for the first offence. Now it is apparent that this offence was as fully consummated when the vessel was off Fort Moultrie, a, point within the State and without the city, as if she had anchored and landed ■ the negro at Bacon’s bridge, the head of the Ashley river navigation, and consequently the offence was committed and completed without the limits of the city, and the jurisdiction of it belonged to-the Circuit Court.
By the rules of the Common Lawr, one charged with an. offence against the Slate, must be put on his trial in the county, (or to use a language more applicable to the state of things here,) in a Court haying jurisdiction of the offence, and over the territory where it was committed; and although a rigid adherence to it was productive of so much inconvenience in particular cases, that the parliament of England found it necessary to make many exceptions, yet the Court, if it had the power, would not be inclined to do so in a case in which all the reasons of the general rule would apply.
The foundation of the rule is the supposed facilities which a Jury of the vicinage have in investigating and ascertaining the truth of the facts, and although in the present case it would not apply with all its force, yet in laying down a rule upon the subject, we must have a view to its general operation. If, for instance, the negro in question had been brought or introduced into the State through the north-western boundary of Pendleton District, and had found his way into the city by traversing the intervening space, a distance of more than 250 miles, and if, as I suppose, the offence was completed when he crossed the boundary, no one will deny that the reasons *483 oí the rule would apply ; and although the circumstances may differ when he enters over the bar in view of the •city, the principle is the same.
The rule is the same even in offences that are in their •nature, in some degree, transitory, and is a matter of substance and not of form merely. The Common Law allows of but one exception, or rather modification of this rule, and that is the case of goods stolen in one county, and carried by the thief into another; and this exception proceeds on the principle that the legal possession of the stolen goods still remains in the owner, and every moment’s continuance of the trespass or felony, in legal contemplation, amounts to a new capture and asportation ; but in the case under consideration the offence consists in one act — the introducing or bringing a free negro, &e. into the State ; and although it may be repeated, it is, from its nature, incapable of a continuation; for the act imposes no penalty for using or employing him when he is within the State. For the doctrine on the subject of the Venue—see 1 Chit. Crim. Law, 146-177.
Jurisdiction of the case is also claimed for the City-Court, as being derived from the act of 1820, and I will now proceed to consider the foundation of that claim.
That act prohibits the bringing into the State of any free negro, or mulatto, by land or water, and imposes a penalty of $500 on all persons offending against it, and to be recovered by action of debt, or by bill, plaint, or information, in any Court of Record having jurisdiction of the amountThe act of 1823, on which this indictment is founded, is amendatory to this act, but makes no alteration as to the mode of procéeding, or on the subject of jurisdiction ; and I agree with the counsel opposed to the motion, that they are to be taken together and construed as one act,and that if the City Courthad jurisdiction under the act of 1820, it is not taken away by the act of 1823.
*484 Ail experience shows, that there .is a continued effort by Courts oí. subordinate and limited jurisdiction to extend their power beyond their legitimate limits ; and that that inclination is forced on them, rather by the convenience of suitors than by any disposition of the .Courts-themselves, is, I think, very apparent. But be the cause what it may, the necessity exists of imposing ¿ restraint on this gradual' and imperceptible extension of power, and this necessity has given rise to the rule that these powers should be determined by a rigid construction or implication.
It has been before shown that the City Court had not jurisdiction under the act of 1818, which limited it'to the limits of the city, nor is it expressly conferred by the act of 1820; but it is claimed for it, as being a “ Court of Record, having jurisdiction of the amount” — so that it is clearly an effort to extend by construction the territorial jurisdiction of the Court in consequence of- having jurisdiction over the amount; and by the same course of reasoning, the Court might entertain cases of any description to the amount within their jurisdiction, wherever they might originate, notwithstanding the restraints imposed by the aet defining its powers.
Again — the Court of Equity has jurisdiction both over the-territory, and of the amount,- and being a Court of Record might, according to the argument for the same, and even stronger reasons, claim the right to entertain a prosecution under this act. But no one will pretend that it ought to be allowed. The jurisdiction of that Court is, by its . organization and proceedings, confined to other subjects of litigation, and cannot, therefore, be extended to this.
The legislature may, it is true, authorize the venue to be laid, in any territory or jurisdiction .within the limits of the State; but when they create an offence without *485 referring it to a particular jurisdiction or territorial limits, the Common Law rule must prevail. The venue must be laid in the district, and the cause tried in the Court having jurisdiction of the offence and over the territory where it was committed. ' The motion to quash the indictment is therefore granted.

Indictment, quashed.